324-0330 in re Marriage of Carolyn M. Conklin, now known as Carolyn M. Albrecht, Appellee, and Edward K. Conklin, Appellant. Mr. Ostro, if you're ready to proceed. Thank you, Your Honor. Mr. Kenney, Honorable Justices, there are three salient and disputable facts in this case. The first is that Mr. Conklin's vastly increased income was a substantial change in circumstances, which was acknowledged by the court and by Carolyn's counsel and is vindicated by the facts. His highest income between 2008, which was four years before the dissolution, and 2018 when the agreed order was entered regarding the 30 percent straight maintenance percentage, his highest income had been $850,000, and that one was largely from cashing in the options that had been awarded to her in the dissolution, which was done at her request. Mr. Conklin's 2018 income was $512,000, and his 2021 income was approximately $2 million. That is a substantial change in circumstances. The marital settlement agreement, and this is the second salient fact, the marital settlement agreement and the order of March of 2018 both specifically stated the parties had the right to seek modification for a substantial change in circumstances, and there were no reservations to those provisions in either document. Mr. Ostro, when you talk about this change in income, that was largely based on his exercise of stock options, right? Yes, ones that he had received from his prior job in, I think, mostly 2013, 14, and 15, so after the dissolution. So you're saying he didn't even receive the options until after the dissolution? Correct. The ones he was cashing in that resulted in the $2 million income. The options that he had received at McDonald's prior to the dissolution were divided as property in the marital settlement agreement. Okay, I just wanted to make sure. Okay, so the marital settlement agreement itself not only says that the parties retain the right to seek a modification, it also had the general provision that as long as they had expressed their right to modification with regard to a particular facet of the agreement, it was waived, but when it was expressed, it was not waived. The maintenance, at least as of 2021, now this is the third settlement, in fact, it dramatically exceeds both the marital standard of living and Ms. Albrecht's current needs. Edward's petition for a cap is simply a request for a modification, and the underlying facts we believe entitled him to one under the law and under case precedent. The reasons that the court did not believe those facts were enough to put a cap on the maintenance were ones that we believe were fatally flawed. First, the court found that Ed had waived his right to modify if the substantial change in circumstances was an increase in his income no matter how high it was, and the court did this on the basis that he agreed to 30 percent of his income that would be in excess of the income that established the maintenance. But a waiver cannot be inferred, and in the Velasquez case, they say that there can be no forfeit of a right to modify from a marital settlement agreement unless that's expressly stated in the agreement, which obviously here it wasn't. And under statute, a maintenance modification can only be waived by the express statement in an order or in an agreement, and obviously there was no express statement here. To the contrary, the parties specifically retain their rights to modifying both the marital settlement agreement and the order. The language from the marital settlement agreement and the agreed order should be enforced as written, and the right to pursue a modification in both of those documents was unconditional. Under the trial court analysis, any percentage order without a cap would constitute a waiver of modifying under these kinds of circumstances, and that is not what case law states. Yabush in particular states that an agreed percentage order can be modified with a cap when the obligor's income rises to the level where the consequence of the percentage becomes unrelated to the purpose of the allowance. Yabush is especially compelling here because it child support, which is not only somewhat more sacrosanct than maintenance, but it's statutorily meant to have the children supported as they would have been had the marriage not dissolved. And yet the court in Yabush said even though there was an agreement for a percentage above a base, it should be capped when the child support without a cap would simply become a windfall. And I think the court reaffirmed that in its recent case, this court in the recent case of Knight, which we cite in the reply brief. Maintenance, on the other hand, is supposed to keep the payee in the marital standard of living. In this particular case, Carolyn has accumulated almost $3 million in assets, $600,000 in liquid, $1.7 million in retirement assets, and she has over $500,000 in home equity. And that's great, and it's great for her, but it was not Mr. Cochran's obligation to fund her estate ad infinitum. As stated in the Brunke case, which we have cited, the payee is not entitled to an increase where the payer now makes money well in excess of what the marriage lived on. Because at that point, it becomes a and I think it's hard to dispute that the $450,000, which Carolyn could receive from a $2 million income over what the base is, can only constitute a windfall. Not all of it, as I will get to, but most of it. There was no direct evidence that it was Mr. Cochran's agreement to waive his right to seek modification for any reason the law would sanction, including this one. In his testimony, he said he did not believe that that had been his agreement, and he was found to be a credible witness by the court. And in Mr. Cochran's experience, as I noted previously, his prior options from McDonald's had been divided as property. The options he cashed out after 2018 had been listed as property worth a little over $300,000 in his financial affidavit during the litigation that led up to the 2018 agreed order. And they had been granted several years before by an employer he no longer had in 2018. And he also had no idea in 2018 of what the value might have been in the future. I mean, it turned out to be great, but he would not have known that in 2018. In the March 2018 order, the parties waived other claims, which could have included any claim to the options McDonald had granted them after the dissolution, but before the March of 2018 order. Moreover, it's hard to think that Carolyn could have contemplated what actually occurred since Edward had never made anywhere near this amount of money. And she also did not testify at any time that she thought that her right to maintenance would be unlimited because of the percentage on top of the base. The second reason that the court denied Edward's petition was that it found he must have contemplated he would have to pay from whatever income the McDonald options might generate. And under case law, contemplation cannot be inferred, even assuming it can be utilized here at all, which I'll get to at the end of my time here. Such as in the Hofferkamp and Weissman cases, which we cited when contemplation could be found by a court. In the case of an engagement ring, there's a fact that supports that it was given in contemplation of the marriage. And that fact is we're engaged. And that's therefore a ring becomes a conditional gift. And if you don't get married, the ring is supposed to be returned. And in Weissman, the parties, this is when you could still, the statute did not preclude a court from finding a home and a residence had been purchased in contemplation of marriage. And there are the parties that looked for a home together and the husband bought it just before they got married. And then they moved into the home together. So there were facts that supported that that home was purchased in contemplation of marriage. There's no fact here that supports the conclusion that Mr. Conklin contemplated that no matter how much money he made, he would be giving 30% of it to his ex-spouse. Findings in general cannot be based on speculation. And here with all due respect to the trial court, it was speculating both that Mr. Conklin knew his McDonald options could generate as much income as they actually did, and that he was committing himself to paying an unlimited amount. 510A5, which has now been amended with regard to contemplation, even carefully states that a court can still consider contemplation or the parties can agree to it, as long as they express the specific event that they're anticipating. And in this particular instance, there is nothing that was so stated. Whether by agreement or court order, the consequences of an uncapped percentage shouldn't be such that the intent of the maintenance statute is defied in a way that makes the payee a continuing partner in the ex-spouse's career, no matter how successful that career may be. And I would add that Section 502 of the Illinois Marriage and Dissolution of Marriage Act specifically encourages the settlement of dissolution cases. And a ruling that the 30% makes it unlimited would simply make it more difficult to settle cases because it adds agreeing to a cap as an element of trying to get the case resolved without a trial. I would briefly address our position that contemplation should, as a matter of law, should not be a basis here. And I realize one part of this argument is a minority view in courts that have considered it. But I think, as we stated, 801 was part of revamping the entire dissolution statute in 2016. And in my view, it was merely telling courts how those changes that were made, which were vast and addressed almost every facet of what happens in a dissolution judgment, the court, the legislature did not provide an 801B and C that that same process would apply to future amendments in terms of how they could be addressed and pled later. And the amended 510A5 did not state it only applied to actions filed after its effective date. So in my opinion, I think I like the minority view and heritage of AH, which is that courts are supposed to construe statutes as written and not supply additional terms. And I think when cases that say, you know, the pleading and proving part of amendments apply, even though the legislature never said that. But I also want to add one thing that I don't think has been considered by courts in the past. The language of 801B has a distinct clause that says evidence adduced after the effective date of the new law cannot be used at trial. Now, that, in my opinion, that sentence is unnecessary if it's only addressing cases in which the pleading itself was barred. Because if the pleading was barred, any evidence of the issue would be irrelevant. So it's our view that since the hearing in this case took place after the effective date of 510A5, evidence of contemplation, not that there was any, because our argument is that there wasn't, should not have been allowed. But also, even if it could be inferred, shouldn't have been allowed to be inferred under 801B. And I want to make it clear, and I... Counselor, your time has expired. You're going to have five minutes on rebuttal here. But before we switch over to Mr. Kenney, Justice Anderson, any questions? No questions. Justice Peterson, any questions? I take that as that was a no, you're muted right now, Justice Peterson. But no, it was clearly a no. I saw your head nod. Yes. No, I said no, I did not. Mr. Kenney. Thank you, Your Honor. May it please the court, counsel. Justice Anderson, you raised one issue, and I think it's important to kind of review that. You asked whether the options that gave rise to this income were granted after the divorce, and they were, in fact. And that's important because both the original judgment of dissolution of marriage, as well as the agreed order into which the parties entered in 18, excluded from income that was going to be subject to maintenance, property that was awarded to Mr. Conklin under the judgment of dissolution of marriage. And so if he took a distribution from a 401k that was assigned to him under the judgment of dissolution of marriage, that was not going to be treated as income on which maintenance accrued because it was treated as property. On the other hand, the options that were awarded to him after the judgment of dissolution of marriage were not divided as property and are specifically included, Judge. I should say specifically. The order of the agreed order of March of 18 essentially includes all income of Mr. Conklin in excess of his base, and it excludes, once again, that property that was awarded to him under the judgment. And so any other property would be subject to maintenance, and that would include these options that were awarded to him after the judgment of dissolution of marriage. So I think that's important to note. Did the 18 order also exclude if he had exercised other options and investments he made that weren't based in the income field? In other words, the 18 order specifically excludes a couple of different types of assets. I think there's more than one, correct? I think that's true, Your Honor, and I think what that language was intended to get at was the income from the assets that had already been divided as property and were awarded to Mr. Conklin under the judgment under the judgment of dissolution of marriage. I think that was the intent of that language. But all other income was fair game and was going to be subject to maintenance. Mr. Kinney, let me ask you this. What if my personal prayers were answered and In-N-Out Burger decided to open up operations in the Chicago area and they wanted to hire Mr. Conklin at $10 million a year? Would that be a significant change of circumstances that would justify a change, a downward change? I think that it could be, Your Honor. That's different, though, from the fact pattern we have here, and that is because the— I'm just trying to figure out where to draw the line. I mean, what becomes a substantial change? Understood. I think the unmistakable fact here, though, Justice, please, the income that resulted in—the assets that resulted in this income in 2021 were all in existence at the time of the agreed order. Mr. Conklin was aware of these options, and Mr. Conklin was aware these options that were in existence at the time of the agreed order would be subject to maintenance. Now, counsel disputes that, and counsel argues that the trial court didn't make that finding. But I would challenge that, and I would point out to Your Honors, the appendix to Mr. Conklin's brief includes the 30-page transcript from the trial court's findings. And I think it bears some repeating. Here's what the court found as it relates to what Mr. Conklin was aware of at the time of this agreed order. And this is found at the appendix, page 66. And the trial court said, but in any event, in that regard, the court recalls significant testimony of Mr. Conklin that he knew that the income that he had earned in the form of options prior to the 3218 amendment of the judgment would be considered income that would fall under the 30% gross formula. There was repeated testimony regarding that and regarding the execution of McDonald's options in 2021. Because the court goes on, makes that similar finding on the very next page. I think, Your Honor, if this income was earned incident to maybe some options that had been acquired subsequent to this agreed order, maybe was a brand new source of revenue, I think that might be, it could be considered a change in circumstance that was not contemplated. But I don't think that can possibly be the case with respect to assets about which everyone was aware at the time of the entry of this agreed order. I'm not sure if that answers your question. Just briefly, I would remind Your Honors that this is a marriage of 24 years. Under the judgment, Mr. Conklin agreed to pay maintenance just over $6,000 a month plus 45% of the net of any income in excess of his base, no cap on that maintenance award. He filed a petition to modify in 2017, which resulted in this agreed order that we are now discussing. In March 2 of 18, in which Mr. Conklin agreed to pay $59.17 a month on a base of $250,000 plus 30% of gross income in excess, excluding these certain assets. Importantly, there was no cap again on income on which maintenance was going to accrue. March 20, Mr. Conklin files his petition to modify and he asserts that this income is rising and an uncapped maintenance award would result in a windfall to Ms. Conklin. Importantly, as of the date of his filing, he hadn't received any such increased income. It was well after the date on which he filed his petition when he exercised all four years of these options in one year that resulted in this big award in income in excess of $2 million. Following the trial, as you're aware, the trial court denied the petition. The transcript of its rulings, and I would invite your honors to review that because the trial court conducted an extensive review of all of the evidence, all of the law in this case. From my perspective, your honors, I think could well have written your opinion in this case. The trial court examined Durdove, Salvatore, Hughes, Yebush, Singletary, considered all of those cases and found Conley, the third district case, to be the most persuasive. In Conley, the court had to construe a provision in a settlement agreement that was near to the provision here, a child support case, but the payer in that case agreed to pay a specific dollar amount of child support on his $100,000 base income plus 28% of any income in excess of that. He filed a petition to modify, asserting that his income had increased and that was a modification. The language this court used, I think, is important. It held that because an increase in Ryan's income was contemplated by the parties when they entered into the settlement agreement, and the settlement agreement states how an increase in will change his child support obligation. Ryan's salary increase does not constitute a substantial change in circumstance. It's preceded that by saying an increase in his income under these circumstances could never be a substantial change in circumstance. Now, never is not terribly equivocal. It is pretty straightforward, and that very language in this case would compel the same type of finding. An increase in Mr. Conklin's income could never be a basis for a substantial change because their agreed order, number one, obviously contemplated an increase and dealt specifically with how maintenance would be on that increase. So the trial court compared Conley to, for example, Singletary, which was a first district case, and found, first of all, Conley was a third district case and was binding on it, but it also found Conley to be more persuasive than Singletary because it found Singletary actually never considered this contemplation or foreseeability argument, never even considered it. So it's our position, based upon this court's ruling in Conley, an increase in income cannot be a substantial change in circumstance. It was contemplated and therefore it's not a change in circumstance. Concerning the amendment to Section 510 and its applicability to this case, Mr. Ostroh cited in his reply brief the Knight case, which was decided in December of 2024. That case, it's a first district case, actually does a fairly detailed analysis of Section 801 and its applicability to modification proceedings. And the Knight case held that 801 does in fact apply to amendments to the Illinois Marriage and Dissolution of Marriage Act and held that with respect to modifications, 801C applies. And under 801C, if the petition to modify was filed prior to the amendment, then the amendment doesn't apply. So that is consistent with a number of the cases that I cited in my brief. And so if under Knight and the other cases, this modification does not apply. But perhaps even more importantly, or at least equally importantly, you know, the trial court also considered that very issue. And the trial court said whether it applies or not is really not going to make much difference in this case, because even under the amendment, you know, the parties can agree to specify some circumstances that will not be, that are contemplated and are including this provision whereby, you know, there's a percentage order on the excess. Court said that's contemplated. That's contemplated. It's clearly contemplated and the parties included it in their provision. So even if we, even if the amendment to 510 applies, it wouldn't change the outcome here because this order does specify what is foreseeable and what is contemplated. Just a few other, a few other points. The, counsel suggests, I think in the brief and maybe today, that the trial court came to some conclusion that this provision, this order was not modifiable. And that is simply not so. The court acknowledged both the judgment of dissolution of marriage and the order of 2018 were modifiable, but only modifiable based upon a substantial change in circumstance, one that wasn't contemplated. Court simply found that Mr. Conklin failed in his burden of proving a substantial change in circumstance. And for that reason, this order was not modifiable. Counsel today argues, and in his brief argues, Yabush in support of his position. And I think I pointed out in the brief, Yabush is different from this case. And Yabush, the additional income that gave rise to the petition was income that was not contemplated under the judgment. The judgment specified a base amount plus income from bonuses, commissions, and the like. In the Yabush case, the payer started a new business after the judgment. And he was arguing that this business income was not contemplated and could be the basis for a modification. The appellate court found that to be true. It wasn't contemplated because it was a completely new source of income. I think it's important to remember in this case that this obligation, this uncapped obligation, is not the result of an order of court following a hearing. This is the product of an agreement of the parties. The parties agreed that this was uncapped. Back in 2018, had Mr. Conklin wanted to cap this maintenance, he was free to do so. He could have done so. He could have negotiated that. He did not. And when he entered into that agreement, he knew. He knew. Mr. Kennedy, your time is up, if you want to just finish with that last thought. I'm simply saying, Judge, that all of this was contemplated by Mr. Conklin and cannot be the basis for a modification. Thank you. Judges, any other questions? Do not. All right. Joel, how do I pronounce your last name? It is Ostro. Okay. Mr. Ostro, you'll have five minutes in rebuttal. Thank you. First of all, I want to say that Mr. Kennedy seemed to change his answer to Justice Anderson's question from when he first answered it and then saying under no circumstances could an increase in income amount to a substantial change in circumstances here. And the fact that Mr. Conklin cashed in those options after he filed his petition, but before the agreed order was entered, after 2018, tells me that he didn't think there were going to be income purposes of paying maintenance or he wouldn't have done so. And I think that just adds to the other facts that show he did not realize that no matter how much money he made, 30% of it was going to Carolyn. And everything that Mr. Kennedy said about um, contemplation or waiver still relies on inferences and not on facts. And you can't, the court is not supposed to do that. Um, the fact that other income was excluded only results in this being included, no matter how much it is, because you're inferring that not because the party said, we contemplate that Mr. Conklin is going to make millions of dollars in the future by cashing in options that he received four years ago. And those are going to be included in the 30%. Uh, it's, it's a windfall and, and a windfall, uh, is entitled to a cap. And I, in terms of, you know, well, all other income. So if Mr. Conklin sees that there's a 5% interest on CDs that he buys for two years, all of a sudden those become three and a half percent to him. It becomes three and a half percent interest to him, a lake house. It's not his principal residence. He buys and sells two years later for a hundred thousand dollar profit, $30,000 goes to, uh, um, Michelle, Michelle Brecht. Uh, I don't think that's a council that, that goes to that language. I keep quoting there. That would be, that, that is specifically excluded in the 18 order. That's not income related. It says his own personal, his own personal separate investments. If he cashes those in that are not income related, related to your work are excluded. That's how detailed that 18 order. I know it's handwritten, right? But those examples you're giving that they don't, they don't. Okay. But, but you still, you still wind up with inferring that that means that no matter how much he made from the income that from the rest of his income, he could never alleged as a substantial change in circumstances. And he can, because, uh, McKellie and, and your Bush both say so. Um, and, and it's, I want to make clear also that, that, well, first of all, the fact that he was aware he had the, uh, of the options doesn't contemplate, doesn't say he contemplated no matter how much they became, uh, worth that he would have to pay. I mean, Mr. Kennedy's position is there's no, there's, there can't be a cap here. And, and that, that position is just, uh, uh, incorrect because you know, once case law said, once you get past what the statute intended, uh, you, you, and once it becomes a windfall, uh, a cap can be applied. It's just simply a modification. And I want to make it clear that, um, we're not saying that Ms. Albrecht is not entitled to an extra 30% of a reasonable amount of Mr. Conklin's income and excess of the base. We're simply asking the court to reverse this finding or, or ruling that it's open-ended maintenance, uh, because it isn't, and it shouldn't be, and under the law it can't be, um, and to remand the cause for the imposition of a reasonable cap retroactive to the date of Mr. Conklin filing his petition for modification. Under rule 366, this court could set that cap. I believe, uh, Mr. Conklin's trial counsel suggested an additional $60,000 as a cap, which seems reasonable to me. It's still well in excess of the marital standard of living and her needs. Um, so with that, um, I would conclude unless the court has any further questions. Thank you, Mr. Ashton. Questions, gentlemen? Gentlemen, thank you very much for joining us here today. Uh, we will take this case under advisement and issue a written opinion and, uh, excuse me, I keep saying opinion, a written disposition in due course.